UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:20-cr-00221 |
| | : | |
| RAFAEL VEGA-RODRIGUEZ, | : | |
| Defendant | : | |

**O P I N I O N**
**Government Motion in Limine, ECF No. 30 – Granted in Part; Denied in Part**

**Joseph F. Leeson, Jr.**                                                    **June 13, 2023**
**United States District Judge**

## I.      INTRODUCTION

The above-captioned case involves charges of attempted murder and assault of three federal agents, as well as multiple firearms violations.  The charges arise from conduct on March 1, 2020, when Defendant Rafael Vega-Rodriguez allegedly opened fire on three federal agents that had approached him on the street to execute an open parole violation warrant.  The Government has filed a Motion in Limine seeking a pretrial ruling on the admissibility of evidence pursuant to Rule 404(b) regarding Vega-Rodriguez's parole history, statements by Vega-Rodriguez in the months prior to the shooting on Facebook Messenger, and photographs and a video extracted from the cellphone of an individual allegedly with Vega-Rodriguez at the time of the shooting.  The Motion further puts Vega-Rodriguez on notice that depending on the defense presented at trial, the Government may seek to introduce evidence regarding his alleged gang affiliation and alleged involvement in several area shootings.  Vega-Rodriguez objects to the Motion in its entirety.  For the reasons below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

On or about March 3, 2020, a Criminal Complaint was filed against Vega-Rodriguez charging him in connection with his alleged shooting upon three federal agents on March 1, 2020.  *See* Compl., ECF No. 1.  After extensions of time to indict, an Indictment was filed on August 4, 2020.  *See* Ind., ECF No. 11.  The Indictment charges Vega-Rodriguez with eight counts: (1-3) attempted murder of a federal officer in violation of 18 U.S.C. §§ 1113, 1114(a)(3); (4-6) assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. §§ 111(a)-(b); (7) use of a firearm during and in relation to a crime as charged in Counts One through Six in violation of 18 U.S.C. § 924(c)(1); and (8) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[1]  The federal officers are identified in the Indictment as Federal Bureau of Investigation ("FBI") Special Agents ("SA") F.C., A.J., and F.N.

The Government alleges the following.  *See* Compl.; Mot., ECF No. 30.  In February 2020, the FBI was investigating state and federal crimes believed to have been committed by Vega-Rodriguez.  After learning that Vega-Rodriguez was suspected in a series of recent shootings in Reading, Pennsylvania and that there was an active warrant for absconding from his parole supervision, FBI SAs installed a pole camera on February 28, 2020, in the vicinity of 547

---

[1]    To convict Vega-Rodriguez of attempted murder in violation of 18 U.S.C. §§ 1113, 1114(a)(3), the Government must prove, *inter alia*, that he attempted to kill the federal agent(s) named in the Indictment with malice aforethought.  To establish attempted murder in the first degree, the Government must also show that the attempted killing was premeditated.  To convict him of assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. §§ 111(a)-(b), the Government must prove, *inter alia*, that Vega-Rodriguez, using a deadly or dangerous weapon, willfully and forcibly assaulted (or resisted, opposed, impeded, intimidated, interfered with) federal agent(s) during the performance, or on account, of the agent(s)' official duties.  Both firearms charges require, *inter alia*, proof of knowledge.  *See Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) ("We conclude that in a prosecution under 18 U. S. C. §922(g) and §924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.").

Gordon Street, Reading in an attempt to locate Vega-Rodriguez.  On March 1, 2020, at approximately 11:45 P.M., FBI SAs allegedly identified Vega-Rodriguez as one of two persons walking toward Gordon Street.  Two SAs, wearing vests that identified themselves as "FBI," approached.  Vega-Rodriguez, according to the Government's allegations, immediately drew a handgun and began shooting at the SAs.  One of the SAs returned fire.  Vega-Rodriguez allegedly continued to point his gun at the SAs as he and the other individual, Negron-Diaz, fled.  Negron-Diaz allegedly dropped a Canik 9 mm firearm during flight, which the FBI recovered at the scene.  Seven shell casings were also collected from the scene, four of which are believed to have been from the gun allegedly fired by Vega-Rodriguez.

Vega-Rodriguez was located at a townhouse in Leola, Pennsylvania the following day and arrested.  During a search, FBI agents found a backpack stuffed between a sofa and the wall inside a stand-alone garage adjacent to the townhouse.  Inside the backpack was a black Beretta handgun loaded with an extended magazine, which was loaded with numerous rounds of ammunition.  Philadelphia Police Firearms Identification Unit determined that the shell casings recovered from the scene of the shooting on March 1, 2020, were fired from the Beretta recovered at the townhouse.  Vega-Rodriguez has prior felony convictions in the Commonwealth of Pennsylvania that preclude him from possessing a firearm.

The Government has filed a Motion in Limine seeking to admit evidence under Federal Rules of Evidence 404(b) and 801(d)(2)(A).  *See* Mot.  The Government moves to admit evidence in essentially four categories: (1) Vega-Rodriguez's parole violation history and absconding warrant; (2) statements by Vega-Rodriguez on Facebook Messenger; (3) photographs and a video extracted from the cell phone of Negron-Diaz; and (4) Vega-Rodriguez's gang affiliation and involvement in other shootings, admission of which will be sought depending on

the evidence offered by defense at trial.  *See id.*  Vega-Rodriguez objects to the proffered

evidence.  *See* Resp., ECF No. 32.

## III.    LEGAL STANDARDS

### A.    Rule 404(b) - Review of Applicable Law

Federal Rule of Evidence 404(b) "generally prohibits the introduction of evidence of

extrinsic[2] acts that might adversely reflect on the actor's character, unless that evidence bears

upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v.*

*United States*, 485 U.S. 681, 685 (1988). *See also* Fed. R. Ev. 404(b)(2) (Evidence of a crime,

wrong, or other act may be admissible to prove "motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident.").  "Rule 404(b) is a rule of

exclusion, meaning that it excludes evidence unless the proponent can demonstrate its

admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for

which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).

"To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a

proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a

limiting instruction (where requested) about the purpose for which the jury may consider it."

*United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010).  "A proper purpose is one that is

'probative of a material issue other than character.'" *Id.* at 250 (quoting *Huddleston*, 485 U.S. at

---

2       "Extrinsic evidence must be analyzed under Rule 404(b)." *United States v. Green*, 617
F.3d 233, 245 (3d Cir. 2010).  Intrinsic evidence, on the other hand, need not be analyzed under
Rule 404(b).  *See id.*  Courts "exempt intrinsic evidence from application of Rule 404(b) on the
theory that there is no 'other' wrongful conduct at issue; the evidence is admissible as part and
parcel of the charged offense." *Id.*  Intrinsic evidence falls under one of two narrow categories
of evidence.  *See id.* at 248-49.  "First, evidence is intrinsic if it directly proves the charged
offense. . . . Second, uncharged acts performed contemporaneously with the charged crime may
be termed intrinsic if they facilitate the commission of the charged crime." *Id.* (internal
quotations omitted).

686).  "[T]he party seeking to admit evidence under Rule 404(b)[] bears the burden of demonstrating its applicability [and] identifying a proper purpose."  *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (holding that the court must determine whether the government has offered a non-propensity purpose "that is 'at issue' in, or relevant to, the prosecution").  "If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one."  *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992).

### B.      Rule 401 and Rule 402 - Review of Applicable Law

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action."  Fed. R. Ev. 401.  "This definition is very broad."  *Green*, 617 F.3d at 251 (internal quotations omitted).  "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."  Fed. R. Ev. 402.

### C.      Rule 403 - Review of Applicable Law

Rule 403 of the Federal Rules of Evidence provides: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The Rule "creates a presumption of admissibility."  *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).  "Rule 403 mandates a balancing test, 'requiring sensitivity on the part of the trial court to the subtleties of the particular situation.'"  *United States v. Cunningham*, 694 F.3d 372, 391 (3d Cir. 2012) (quoting *United*

*States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010)).  It is not enough that the evidence be

prejudicial because "[v]irtually all evidence is prejudicial or it isn't material."  *United States v.*

*Maurizio*, No. 3:14-23, 2015 U.S. Dist. LEXIS 118516, at *25 (W.D. Pa. Sep. 4, 2015) (internal

quotations omitted).  Rather, the probative value of the evidence must be "substantially

outweighed" by the danger of "unfair prejudice."  *See* Fed. R. Ev. 403; *Cross*, 308 F.3d at 323

(holding that "when evidence is highly probative, even a large risk of unfair prejudice may be

tolerable").

## IV.    DISCUSSION

### A.    The parole violation evidence is admissible in part.[3]

The Government moves to admit evidence (collectively referred to herein as the "parole

violation evidence") that:

1.      In November 2017, Vega-Rodriguez, who had been under the supervision of the Pennsylvania Board of Probation and Parole ("PBPP") since May 2017, was charged with absconding and a warrant was issued.

2.      He was arrested on the warrant on December 24, 2017, in Florida and was extradited to Pennsylvania.

3.      Vega-Rodriguez was sentenced to six months imprisonment for the parole violation.

4.      In June 2019, he was still under PBPP's supervision and absconded from supervision.

5.      On February 27, 2020, the PBPP issued an arrest warrant for Vega-Rodriguez charging him with absconding.

6.      The arrest warrant was still active on March 1, 2020.

---

[3]      Any admissibility rulings discussed in this Opinion are conditioned on the Government first laying a proper foundation for the evidence's admission at trial.  Any inadmissibility rulings are without prejudice to being renewed at side bar during trial if additional evidence is proffered.

The Government contends this evidence is admissible background information to explain why the SAs installed a pole camera in the vicinity of 547 Gordon Street on February 28, 2020, to explain the presence of the FBI SAs on March 1, 2020, and to explain why the SAs were armed with handguns, rifles, and wearing body armor while conducting surveillance.  The Government also asserts that a fair inference can be drawn that Vega-Rodriguez knew law enforcement officers would be looking for him because he knew that he had absconded from parole supervision and, also, that he was aware of the consequences of absconding since he was imprisoned for absconding once before.  The Government argues that this is evidence of Vega-Rodriguez's knowledge that the SAs were federal officers, of his motive in the shooting, and of his motive to possess a firearm.

In Response, Vega-Rodriguez states that background information is typically permitted in, although not expressly limited to, a case with conspiracy charges to establish an ongoing relationship and concert of action between coconspirators.  He asserts that because there is no conspiracy charge and because he does not plan to challenge the propriety of the pole camera or arrest warrant, there is no need for extensive background information to tell the story of the case and background is not a proper purpose at issue in the case.  Vega-Rodriguez acknowledges that motive and intent are proper purposes because they will be directly at issue but argues the Government does not need the parole violation evidence to prove motive or intent to kill and, therefore, the probative value of this evidence is outweighed by its prejudicial impact.  He suggests that a limiting instruction will be insufficient to cure the prejudice.

Despite Vega-Rodriguez's intent not to challenge the pole camera evidence or arrest warrant, he may not preclude the Government from presenting its case in the way it chooses.  *See Old Chief v. United States*, 519 U.S. 172, 186-87 (1997) (reaffirming "the familiar, standard rule

that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it").  "Rule 403 does not provide a shield for defendants who engage in [other crimes, wrongs, or] acts. . . . It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *Cross*, 308 F.3d at 325 (quoting *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998)).

The parole violation evidence is offered to explain the conduct of the FBI leading up to and on March 1, 2020, as well as Vega-Rodriguez's reason for allegedly carrying a firearm and for his alleged actions when encountered by the SAs.  Accordingly, the Government offers the parole violation evidence for the proper purpose of "completing the story."  *See Green*, 617 F.3d at 247 (stating that background or "completing the story [] is a proper, non-propensity purpose under Rule 404(b)"); *United States v. Steiner*, 847 F.3d 103, 112-13 (3d Cir. 2017) ("[T]o be clear, we do not conclude that any evidence offered for the purpose of providing background is only admissible in conspiracy cases. There may—and likely will—be other situations in which such evidence is admissible outside of the conspiracy context.").  The evidence is also offered for the proper purposes of showing Vega-Rodriguez's knowledge, intent, and motive for allegedly committing the crimes charged.  *See* Fed. R. Ev. P. 404(b).

The evidence is relevant.  *See Green*, 617 F.3d at 251 (holding that evidence explaining why a witness acted was relevant to the witness's credibility and that "evidence concerning a witness's credibility is always relevant, . . . especially when the witness is testifying for the government in a criminal trial"); *United States v. Sriyuth*, 98 F.3d 739, 747 n.12 (3d Cir. 1996) (holding that "motive is always relevant in a criminal case, even if it is not an element of the

crime"); *Gov't of V.I. v. Pinney*, 967 F.2d 912, 915-16 (3d Cir. 1992) (holding that the government is entitled to introduce evidence relevant to an element of the crime charged).

After conducting the balancing under Rule 403, this Court finds that the probative value of most of the parole violation evidence outweighs the danger of unfair prejudice.  Specifically, evidence that on February 27, 2020, an arrest warrant for Vega-Rodriguez was issued and was still active on March 1, 2020, is admissible to explain why the SAs installed the pole camera, were looking for Vega-Rodriguez, and were carrying rifles and wearing body armor.  *See United States v. Benjamin*, 711 F.3d 371, 380-81 (3d Cir. 2013) (holding that the probative value of evidence of the defendant's parole status was not substantially outweighed by any potential danger of prejudice and admitting the evidence as relevant to the jury's understanding of why the defendant's home was searched, which is where a gun and drugs were found).  This evidence, as well as evidence that Vega-Rodriguez was previously charged with absconding parole supervision and a warrant was issued, that he was arrested on the parole violation warrant on December 24, 2017, that he was sentenced to six months imprisonment for the parole violation and subsequently released, that he was still under PBPP's supervision when he again absconded from supervision, and that the PBPP issued an arrest warrant for Vega-Rodriguez charging him (again) with absconding, is more probative than prejudicial to show, *inter alia*, Vega-Rodriguez's motive, intent, knowledge, and lack of mistake in the alleged crimes.  *See United States v. Horner*, No. 3:11-cr-31, 2013 U.S. Dist. LEXIS 69424, *19 (W.D. Pa. May 16, 2013) (concluding that evidence of the defendant's parole, the conditions of parole, his previous parole violation, the period of reincarceration for this parole violation, and his absconding warrant was admissible under Rule 404(b) as probative of the defendant's intent to avoid returning to prison, of his knowledge that he would likely be incarcerated if he was located after violating the

conditions of his release again, of his motive in committing the alleged kidnapping offense, and of his overall plan[4]).  To reduce any danger of unfair prejudice, the Court will issue a limiting instruction about the purpose(s) for which the jury may consider the evidence.  *See United States v. Wilfredo Cruz*, 326 F.3d 392, 397 (3d Cir. 2003) ("presum[ing] that the jury followed the limiting instruction that the district court gave and considered evidence of [the defendant's] parole status only for the limited purposes offered").  The request to admit this portion of the parole violation evidence is therefore granted.

However, the Court finds the Government has not shown that evidence regarding Vega-Rodriguez's location in Florida at the time of his arrest in December 2017 or the fact he was extradited to Pennsylvania is relevant or probative to its stated purposes.  The request to admit this location-related parole evidence is therefore denied without prejudice.  Additionally, without knowing whether the felon-in-possession charge will be bifurcated at trial or whether Vega-Rodriguez will stipulate to knowing he was previously convicted of a crime punishable by more than one year,[5] the Court cannot determine the probative value of evidence regarding the specific dates of when Vega-Rodriguez's supervision began (May 2017), when he was charged with absconding and a warrant was issued (November 2017), when he again absconded from PBPP's supervision (June 2019), and when an arrest warrant was issued (February 27, 2020).  The request to admit these specific dates in the parole evidence is therefore denied without prejudice.

---

[4]     Believing he might be located by authorities at his Pennsylvania address and also wanting to go back to Maryland where he had contacts and a source of supply for heroin, the defendant suggested stealing a car to drive back to Maryland, but his co-defendant/wife refused.  This turned into a plot to kidnap L.N. for her car.

[5]     To prove Vega-Rodriguez is guilty of being a felon-in-possession in violation of 18 U.S.C. § 922(g)(1), the Government must prove, *inter alia*, that he knowingly possessed a firearm and that he did so knowing "of his status as a person barred from possessing a firearm."  *See Rehaif*, 139 S. Ct. at 2195.

As outlined herein, the Motion in Limine is granted in part and denied in part as to the parole violation evidence.

**B.      Six of the twelve statements on Facebook Messenger are admissible.**

The Government seeks a pre-trial ruling on the admissibility of statements allegedly made by Vega-Rodriguez on Facebook Messenger on June 19, 2019, July 13, 2019, July 26, 2019, November 22, 2019, November 26, 2019, December 1, 2019, December 2, 2019,[6] January 2, 2020, and January 4, 2020.[7]  In these messages, he talks about, *inter alia*, hating and/or shooting cops, being ready for war, being "dangerous," taking "care of" or "kill[ing]" enemies, and having "lots of weapons."  *See* Mot. 1-3.  The Government asserts these statements are admissible party-opponent statements pursuant to Rule 801(d)(2)(A) and relevant to show Vega-Rodriguez's state of mind, intent, knowledge, motive, and/or lack of mistake or accident under Rule 404(b).

Vega-Rodriguez responds that the Facebook messages are not relevant because they do not prove anything about the offenses charged, only his alleged propensity for disliking police and carrying firearms, which is the type of inference Rule 404(b) was designed to protect defendants against.  *See* Resp. 7.  He argues the jury will be unable to compartmentalize this evidence for proper evidentiary purposes, regardless of a limiting instruction.  *See id.* at 9.  Vega-Rodriguez further contends such evidence is unnecessary to prove the Government's case in light of the "overwhelming mountain of incriminating evidence," and that the 404(b) evidence is "fairly voluminous in comparison to the direct evidence of his alleged guilt" such that it would only confuse the jury and constitute nothing more than a character attack.  *See id.*

---

[6]      Two messages
[7]      Three messages

For the reasons set forth below, the Government's request for a pre-trial admissibility ruling pursuant to Rule 404(b) is granted as to six of the twelve statements on Facebook Messenger.[8]

> **A.    The Facebook Messenger statements posted on July 13, 2019, July 26, 2019, one of the December 2, 2019 posts, the two January 4, 2020 posts, and the January 4, 2020, voicemail are admissible.**

Initially, before any of the following Facebook Messenger statements may be admitted, the Government must present sufficient evidence at trial to establish that Vega-Rodriguez is the author/speaker of the statements.  If such proof is offered, the statements are admissible under Rule 801.  *See* Fed. R. Ev. 801(d)(2)(A) (providing that a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party in an individual or representative capacity").

The statements discussed in this section read:[9]

1.    "Y all these cops ads like they really tryna help us…"fukk 12 I hate cops…..Free P."  (Posted July 13, 2019)

2.    "[s]top commenting on my comments I'm not, ur friend I'm ur foe…ur a cop I never call 911…check my jacket…hold up it's too hot out here….I'm hot out here…wait till Winter time…I don't even wear jackets…check my hoodie…Boom!...Bitch!."  (Posted July 26, 2019)

3.    "Da house burning dats wat da fire extinguisher for…get hit up (my lil bitch) dats wat da nurse is for…a lot of surveillance where u b dats wat da mask is for … ."  (Posted December 2, 2019)

---

[8]    It is unclear from the Government's Motion whether and when it intends to introduce the Facebook Messenger statement dated February 16, 2020, which reads: "U tryna help Dem build a case but dey Kno I don't care in due course I'm a spray ur body wit bullets…fucc ya I'm a smoke dis cigarette real quicc…ctf6*… ."  At one point, the Government asserts that it intends to introduce this statement in its case-in-chief, *see* Mot. 15-16, 18, 20-23, but thereafter includes this statement among the evidence it "may" tend to introduce depending on the case presented by Vega-Rodriguez, *see id.* at 23-24, 26.  Because the statement includes reference to the "ctf6" gang, it is included with the gang-related evidence discussed in section D below.

[9]    *See* Mot. 1-3

4.      "I don't know bout u …I vouche for my whole family…we solid we live n we die wit dis street shit we don't do no fukkin telling…u got dat don't fukk wit police den u got me…fuk 12[10] neva fold neva! …I'll kill u…always n forever on…TIME…unquestionably him, PAPO."  (Posted January 4, 2020)

5.      "Da war start to night we aint gonna wait on Iran bitch …. ."  (Posted January 4, 2020)

6.      Voice message that told the recipient to ask someone to stop the bullshit, and that he is ready for war, and has lots of weapons.  (Left January 4, 2020)

Contrary to Vega-Rodriguez's suggestion, these statements are not merely evidence of his alleged propensity to commit the charged crimes; rather, they are offered for, and relevant to, proper evidentiary purposes.  The first, second, and fourth statements specifically mention "cops" and "police," and the third statement suggests wearing a mask to avoid "surveillance," which a jury could reasonably understand to mean hiding from law enforcement to avoid arrest.  Although the fifth and sixth statements do not contain references to law enforcement, they were posted the same day as the fourth statement, which did mention "police" and could reasonably be interpreted as a continuing train of thought.  For these reasons and considering the specific text of each post, the Court finds these statements are admissible for the following purposes.

The July 13, 2019 post is relevant to Vega-Rodriguez's motive and intent for each of the charged crimes.  *See United States v. Miah*, No. 21-110, 2021 U.S. Dist. LEXIS 227686, at *29 (W.D. Pa. Nov. 29, 2021) (admitting under Rule 404(b) a video depicting the defendant in a car in front of a police car with its lights on while saying "f*** the police" to show motive and intent, reasoning that the video is "a direct insight into Defendant's state of mind" . . . because Defendant's expressions [of animosity] about law enforcement are specific and direct"),

---

[10]      The text of the statement differs in the Government's Motion.  The number in the text is either "12" or "121."  *Cf.* Mot. 3, *with* Mot. 22.  This small discrepancy has no impact on the Court's analysis.

*reconsideration denied by* 2021 U.S. Dist. LEXIS 232313 (W.D. Pa. Dec. 4, 2021).  The July 26,

2019 post is relevant to Vega-Rodriguez's intent to shoot at the FBI and to show absence of

mistake.  *See United States v. Fratus*, No. 20-270, 2021 U.S. Dist. LEXIS 138701, at *6-7, 15

(E.D. Pa. July 26, 2021) (admitting the defendant's threatening calls to a Jewish Charity around

June 2020 and to a Congresswoman in July 2018 as evidence of intent in the defendant's

prosecution for knowingly communicating threats to the Philadelphia Police Commissioner in

June 2020), *aff'd* No. 22-1185, 2023 U.S. App. LEXIS 7554, at *5 (3d Cir. Mar. 30, 2023)

(agreeing that the calls were relevant to the defendant's intent to threaten, motive for sending

threats, and showed the absence of mistake).  The December 2, 2019 post is relevant to show

Vega-Rodriguez's state of mind and intent.  *See Miah*, 2021 U.S. Dist. LEXIS 227686, at *21-23

(concluding that the defendant's violent social media post specifically referencing the Boston

Marathon bombers, as well as a video post showing his animosity toward police, were relevant

and admissible to show the defendant's motive and intent for making the charged threat

communications).  The fourth and sixth statements, both made January 4, 2020, are relevant to

Vega-Rodriguez's motive and intent for each of the charged crimes.  *See id.*; *Fratus*, 2021 U.S.

Dist. LEXIS 138701, at *6-7, 15; *United States v. Bedell*, No. 4:08-CR-299, 2009 U.S. Dist.

LEXIS 153751, at *6 (M.D. Pa. Mar. 24, 2009) (admitting the defendant's prior assaults on

correctional officers as motive for committing the charged assaults on correctional officers).  The

fifth statement, which includes a time frame ("Da war start to night. . ."), is relevant to Vega-

Rodriguez's motive for the firearm charges.  *See id.*  Together, the three January 4, 2020

statements have even greater relevancy and are also evidence of Vega-Rodriguez's state of mind

in all the charges and of premeditation in the attempted murder charges.

The probative value of, and the Government's need for, these statements is clear given the Government's burden of establishing, *inter alia*, that Vega-Rodriguez acted with malice aforethought and premeditation in the attempted murder of the named federal agents and that he acted willfully and/or knowingly in the other offenses.  *See United States v. White*, 136 F. App'x 540, 542 (3d Cir. 2005) (determining that the "government had a clear need for the evidence given its burden of establishing the knowing involvement of both [defendants] and the circumstantial nature of its case").  Vega-Rodriguez acknowledges that the "most hotly contested issue at trial will be whether [he] knowingly possessed the firearm in question and willfully fired the shots at the federal agents and did so with malice aforethought and the specific intent to kill," *see* Resp. 4-5, and concedes that "motive and intent to kill will be directly at issue," *id.* 6.  He nevertheless suggests that the Government does not need the Facebook Messenger statements in light of the other evidence of his guilt.  Because sufficiency of the evidence is a question for the jury and in light of the Government's burden to prove these contested issues, this Court finds that the evidence is highly probative.  *See United States v. Sheeran*, 699 F.2d 112, 118 (3d Cir. 1983) (rejecting the defendant's suggestion that the government did not need the evidence because although "[i]t may well be that the Government had sufficient evidence . . . without having to introduce the [challenged] testimony. . ., we cannot say that the Government should have been foreclosed from presenting the strongest possible case, at least in the absence of a concession by the defendant").

Finally, the probative value of the evidence is not substantially outweighed by the danger of confusion or of unfair prejudice.  *See Miah*, 2021 U.S. Dist. LEXIS 227686, at *21-23, 29-30 (concluding that although the defendant's violent social media post referencing the Boston Marathon bombers and video showing the defendant's hostility toward police may be prejudicial.

the probative value of the evidence was not substantially outweighed by the danger of any such

prejudice or confusion of the issues, "particularly when a limiting instruction can be offered to

mitigate any concern that the jury would use this evidence to draw an improper propensity

inference"), *reconsideration denied by* 2021 U.S. Dist. LEXIS 232313, at *8-9 (reaffirming that

the evidence does not unfairly prejudice the defendant, confuse the issues, or mislead the jury).

To further minimize this risk, the Court will issue a limiting instruction.  *See Green*, 617 F.3d at

252 (holding that "any risk of unfair prejudice was minimized by the District Court's limiting

instruction" about the purpose for which the jury could consider evidence of the defendant's

threat to kill an undercover agent and purchasing dynamite).

     The Government's Motion to admit the statements discussed in this section under Rule

404(b) is granted.

     **B.**     **The Facebook Messenger statements posted on June 19, 2019, November 22, 2019, November 26, 2019, December 1, 2019, and January 2, 2020, as well as one of the December 2, 2019 posts are not admissible.**

     Initially, if the Government presents sufficient evidence at trial to establish that Vega-

Rodriguez is the author/speaker of the statements, the Facebook Messenger statements discussed

in this section are admissible under Rule 801.  *See* Fed. R. Ev. 801(d)(2)(A) (providing that a

statement is not hearsay if it is "offered against an opposing party and . . . was made by the party

in an individual or representative capacity").  Nevertheless, having concluded that the six

statements previously discussed are admissible pursuant to Rule 404(b) and further weighing the

probative value of the Facebook Messenger statements in this section, this Court cannot conclude

at this time that the probative value of these statements is not substantially outweighed by the

danger of unfair prejudice.

The statements discussed in this section, which are not admissible, read:[11]

1.      "when you leave your house be as if you see an enemy until you return…let your WAR stance be your everyday stance…let your everyday stance be your WAR stance….and…THINK LIKE YOUR ENEMY OR DIE!..."  (Posted June 19, 2019)

2.      "Lil bitch talkn bout she gonna line me up…bitch I'm a serial shooter if I think dat u thinkin da wrong shit I'm shooting u…DF…let me smoke dis cigarette real quick." (Posted November 22, 2019)

3.      "don't tell me to be safe, just tell me to be dangerous."  (Posted November 26, 2019)

4.      "…I gang WAR on social media because I gang WAR in real life."  (Posted December 1, 2019)

5.      "…know when you see me I'm a threat to ya well being."  (Posted December 2, 2019)

6.      "… protect me from my friends, I can take care of my enemies."  (Posted January 2, 2020)

The Government argues that the first two statements are offered for and relevant to motive and intent, and that the remaining statements are relevant to state of mind and intent. Although these are proper purposes under Rule 404(b), "it is not enough for the Government to merely identify a valid non-propensity purpose under Rule 404(b)(2). Crucially, the Government must also show that the evidence is relevant to that purpose."  *See United States v. Brown*, 765 F.3d 278, 292 (3d Cir. 2014).  "In proffering such evidence, the government must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference."  *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013).  The courts "require that this chain be articulated with careful precision."  *Caldwell*, 760 F.3d at 281.  The Government has made no attempt to do so here and the facts do not clearly lend themselves to an explanation.  Unlike the Facebook Messenger statements previously discussed,

---

[11]      *See* Mot. 1-2

none of the statements identified in this section specifically reference the police or law enforcement, nor were any such statements made on the same day as a post that did so as to conceivably be related.  Consequently, the Government has not shown the admissibility of these statements under Rule 404(b).  *See Miah*, 2021 U.S. Dist. LEXIS 227686, at *48-49 (concluding that the government failed to establish the requisite inferential chain to admit an exhibit containing eleven social media posts reflecting the defendant's violent and hostile mentality because "there are no identifiable references to police or law enforcement in any of them").  The Government's Motion to admit the statements identified in this section under Rule 404(b) is therefore denied without prejudice.

### C.    Evidence from Negron-Diaz's cell phone is admissible in part.

The Government seeks a pre-trial ruling on the admissibility of evidence collected from Negron-Diaz's cell phone.  This evidence, photographs and videos, were posted to Negron-Diaz's cell phone.[12]  Specifically:

1.    Photograph of Vega-Rodriguez holding a firearm and pointing it in the direction of the camera, with Negron Diaz standing next to him (Posted May 19, 2019)

2.    Photograph of Vega-Rodriguez holding a firearm, with Negron-Diaz standing next to him (Posted December 25, 2019)

3.    Photograph of Vega-Rodriguez (Posted December 28, 2019)

4.    Photograph, which was taken inside 547 Gordon Street, of a Beretta firearm with an extended magazine, which appears to be the same firearm that Vega-Rodriguez allegedly used to shoot at the FBI SAs on March 1, 2020, and of the Canik firearm, which Negron-Diaz allegedly dropped at the corner of West Greenwich and Miltimore Streets as he allegedly fled with Vega-Rodriguez after the shooting on March 1, 2020 (Posted February 17, 2020)

5.    Video of Vega-Rodriguez and Negron-Diaz, in which Vega-Rodriguez is holding a Beretta, which was allegedly used in the shooting, with one extended magazine inserted and a second extended magazine visibly loaded with ammunition (Posted February 15, 2020)

---

[12]    *See* Mot. 19-20

The Government argues that the first two photographs are relevant to show Vega-Rodriguez's access to firearms, his familiarity with firearms, and his ongoing relationship with Negron-Diaz.  *See* Mot. 19-20.  It asserts that the third photograph is relevant to show the ongoing relationship between Vega-Rodriguez and Negron Diaz.  *See id.* at 20.  The Government contends that the video is relevant because it is further evidence of Vega-Rodriguez's possession of the Beretta he allegedly used in the charged shooting.  *See id.*

In Response, Vega-Rodriguez suggests that because there is no conspiracy charge and Negron Diaz is not a co-defendant, there is no need for the Government to delve into background information about their relationship.  *See* Resp. 5-6.  He also argues that the pictures prove nothing about the charges, only his alleged propensity for carrying firearms, which contradicts the purposes of Rule 404(b).  *See id.* at 7.   He contends that in light of the extensive incriminating evidence, the evidence would be cumulative and constitute nothing more than a character attack.  *See id.* at 8-9.  Vega-Rodriguez asserts that a limiting instruction will be insufficient to ameliorate the prejudice.  *See* Resp. 10-11.

The Government alleges that Vega-Rodriguez was with Negron Diaz the night of the shooting.  Negron Diaz allegedly dropped a firearm while fleeing with Vega-Rodriguez after the shooting, which was recovered at the scene, and was treated at the hospital for a bullet wound to his thigh.  Negron Diaz had a picture on his cell phone of the firearms allegedly used by him and Vega-Rodriguez in the shooting, the admissibility of which is discussed in below.  Accordingly, regardless of whether Vega-Rodriguez is charged with conspiracy, his relationship with Negron Diaz is relevant to the case and evidence of the same corroborates the Government's allegations against Vega-Rodriguez.  *See Steiner*, 847 F.3d at 112-13 (holding that the admissibility of background evidence is not limited to conspiracy cases).  The three photographs offered to show

their relationship are therefore probative of a proper evidentiary purpose under Rule 404(b).  *See Green*, 617 F.3d at 250 ("A proper purpose is one that is 'probative of a material issue other than character.'" (quoting *Huddleston*, 485 U.S. at 686)).  Although not a purpose offered by the the Government, the video of Vega-Rodriguez and Negron-Diaz is also probative for this reason. *See id.*  Before conducting the balancing test under Rule 403, the Court will consider whether the photographs and video are relevant and probative to any other proper purpose.

While the third photograph is offered only to show Vega-Rodriguez's relationship with Negron Diaz, the Government alleges that the first two photographs are offered to also show Vega-Rodriguez's access to, and familiarity with, firearms.  Because Vega-Rodriguez is charged with several firearms offenses, evidence that he allegedly had access to and possessed a firearm prior to the night of the shooting, as the first two photographs (posted May 19, 2019, and December 25, 2019) show, is relevant, make his alleged possession on the night of the shooting more likely, and is probative of additional proper evidentiary purposes including knowledge. *See United States v. Rivera*, No. 11-619, 2013 U.S. Dist. LEXIS 189531, at *3-4 (E.D. Pa. Apr. 4, 2013) (concluding that photographic evidence of the defendant, who was charged with being a felon in possession of a firearm, possessed firearms before his arrest, made it more likely that he knowingly possessed the firearm as charged in the Indictment and was relevant for the purpose of showing state of mind, knowledge, intent, motive and opportunity, and lack of mistake).  For this reason, the video of Vega-Rodriguez and Negron-Diaz posted two weeks prior to the shooting, which shows Vega-Rodriguez holding a Beretta firearm, which is alleged to be the same one used in the shooting, is also relevant and probative of Vega-Rodriguez's alleged

possession of the Beretta the night of the charged shooting.[13]  *See id.*  The video, which shows one extended magazine inserted in the Beretta and a second extended magazine visibly loaded with ammunition, is also probative of Vega-Rodriguez's state of mind, intent, opportunity, and lack of mistake.  *See id.*

Individually, the probative value of each photograph and of the video is not substantially outweighed by the danger of unfair prejudice.  *See Miah*, 2021 U.S. Dist. LEXIS 227686, at *21-23 (admitting an image of the defendant in tactical gear pretending to aim a gun at the camera to explain why the FBI began investigating the defendant).  However, the first two photographs are relatively similar.[14]  In each, Vega-Rodriguez is standing next to Negron-Diaz.  The photograph posted May 19, 2019, shows Vega-Rodriguez pointing a firearm in the direction of the camera and in the photograph posted December 25, 2019, Vega-Rodriguez is holding a firearm.  The video of Vega-Rodriguez and Negron-Diaz, in which Vega-Rodriguez is holding a Beretta firearm, is also similar in this regard.  Because of the similarity of the other-act evidence, there is a risk of unfair prejudice to Vega-Rodriguez if the video and first two photographs are all admitted.  *See Rivera*, 2013 U.S. Dist. LEXIS 189531, at *3-4 (admitting only one photograph of the defendant with a firearm because "the cumulative effect of admitting all photographs and videos involving gun possession would be highly prejudicial and that such prejudice would outweigh the probative value of the evidence").  The photograph posted December 28, 2019, which is merely a picture of Vega-Rodriguez holds little, if any, danger of unfair prejudice.

---

[13]     The video may also be intrinsic evidence, which need not be analyzed under Rule 404(b). *See Green*, 617 F.3d at 245; *Benjamin*, 711 F.3d at 378 (holding that "the felon-in-possession crime in § 922(g)(1) is a continuing offense").

[14]     The first photograph was taken approximately seven (7) months before the other two; but the Government has not explained why it is necessary to establish the length of Vega-Rodriguez's relationship with Negron Diaz.

Accordingly, the Government may admit the photograph posted December 28, 2019, and either the video or one of the first two photographs (posted May 19, 2019, and December 25, 2019).

Finally, the photograph posted February 17, 2020, of a Beretta firearm with an extended magazine, which appears to be the same firearm that Vega-Rodriguez allegedly used to shoot at the FBI SAs on March 1, 2020, and of the Canik firearm, which Negron-Diaz allegedly dropped while fleeing with Vega-Rodriguez after the shooting, is relevant and tends to corroborate the Government's allegations, which is a proper purpose under Rule 404(b). *See United States v. Jones*, 737 F. App'x 68, 72 (3d Cir. 2018) (concluding a video clip that showed the defendant wearing a hoodie and talking to the store clerk, whom the defendant allegedly robbed, was relevant to corroborate a government witness who testified the defendant told him the clerk had demanded the defendant remove his hoodie); *United States v. Young*, No. 05-CR-307, 2008 U.S. Dist. LEXIS 214, at *11-12 (E.D. Pa. Jan. 2, 2008) (admitting evidence under Rule 404(b) that a heat sealer and currency were recovered from the defendant's residence for the purpose of corroborating the testimony of a co-conspirator that the defendant used a heat sealer to package drug money). The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, if any. *See Young*, 2008 U.S. Dist. LEXIS 214, at *11-12 (concluding that there was nothing particularly prejudicial about the admission of evidence that a heat sealer and currency were recovered from the defendant's residence because it would not necessarily implicate the defendant in any crime or wrongdoing absent other evidence). This photograph is therefore admissible pursuant to Rule 404(b).

A limiting instruction will be given as to the evidence admitted under this section.

### D.     Evidence of Vega-Rodriguez's alleged gang affiliation and alleged involvement in other shootings is not admissible at this time.

The Government states that depending on the case presented by defense at trial, it may

also seek to introduce evidence of:

1.     Vega-Rodriguez's CTF6 gang affiliation as of March 1, 2020, and the ongoing gang war between CTF6 and another gang in Reading, Pennsylvania.

2.     Vega-Rodriguez's alleged involvement in a series of shootings in Reading in November 2019 and in February 2020, as well as the evidence allegedly connecting him to these shootings.

3.     Facebook Messenger statements made by Vega-Rodriguez on January 7, 2020, February 16, 2020, February 18, 2020, and February 22, 2020, three of which refer to the CTF6 gang.

Vega-Rodriguez responds that he has no intention of opening the door to such evidence

and that he would be irreparably prejudiced by the admission of such highly inflammatory

evidence.  *See* Resp. 10 n.2.

At this time, the Government has not shown that the probative value of Vega-Rodriguez's

alleged gang affiliation and alleged involvement in the other shootings is not substantially

outweighed by its prejudicial impact.  *See United States v. Carter*, 410 F. App'x 549, 553 (3d

Cir. 2011) ("affirming the district court's decision to admit evidence of the defendant's gang

membership to connect him to a bag containing the drugs and firearm for which he was charged,

but emphasiz[ing] that gang-affiliation evidence should be admitted only when it is solidly tied

to some legitimate purpose other than a showing of a propensity to criminal conduct such as one

or more of those specified in Rule 404(b): motive, identity, opportunity, and the like").  Any

request for a pre-trial admissibility ruling is therefore denied without prejudice.

## V.      CONCLUSION

After considering the purposes for which the Government's evidence is offered and its

relevancy to the case, the Court finds that the probative value of all the evidence outlined herein

as admissible is not substantially outweighed by the danger of unfair prejudice or confusion.  To

further reduce the risk of these dangers, limiting instructions will be given at trial.  This evidence

falls into four categories.  First, the parole violation evidence, apart from certain dates and

locations, is admissible to provide background and to show Vega-Rodriguez's knowledge, intent,

and motive for allegedly committing the crimes charged.  Second, if the Government establishes

that Vega-Rodriguez is the author of the statements on Facebook Messenger, Rule 801 would

allow them to be admitted.  However, only six of the twelve statements are admissible to show

motive, intent, absence of mistake, and/or state of mind.  The other Facebook Messenger posts

are not relevant and/or not offered for a proper purpose under Rule 404(b).  Third, the video and

each of the photographs recovered from Negron Diaz's cellphone are relevant and offered for

proper purposes under Rule 404(b), such as background, corroboration, possession, state of

mind, intent, opportunity, and lack of mistake.  Nevertheless, to avoid the danger of unfair

prejudice, only three of the five items may be introduced.  Fourth, because the Government has

not shown that the probative value of Vega-Rodriguez's alleged gang affiliation and alleged

involvement in the other shootings is not substantially outweighed by its prejudicial impact, none

of this evidence is admissible under Rule 404(b).

The Government's Motion in Limine is granted in part and denied in part as outlined

above.  All counsel are advised that the admissibility rulings made herein are conditioned on the

Government first laying a proper foundation for the evidence's admission at trial, and that any

inadmissibility rulings are without prejudice to being renewed at side bar during trial if additional evidence is proffered.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge